IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

JOHN C. WALKER                                                               PLAINTIFF

v.                                        Case No. 4:14-cv-4055

TA OPERATING LLC d/b/a
PETRO STOPPING CENTERS                                                       DEFENDANT

## MEMORANDUM OPINION

Before the Court is Defendant TA Operating LLC's Motion for Summary Judgment. (ECF No. 40). Plaintiff John C. Walker has filed a response. (ECF No. 47). Defendant has filed a reply. (ECF No. 54). The Court finds this matter ripe for consideration.

## BACKGROUND

Plaintiff filed a Complaint on April 7, 2014 pursuant to 42 U.S.C. § 1981, alleging that Defendant—his former employer—engaged in unlawful discriminatory employment practices. Plaintiff, an African American, maintains that Defendant subjected him to a hostile work environment based on his race and that Defendant's actions resulted in Plaintiff's constructive termination from his employment.

On March 16, 2011, Plaintiff was hired by Defendant to work as a Customer Service Attendant – Technician I in Prescott, Arkansas. As a Technician, Plaintiff worked on tractor trailers in the mechanic shop at Defendant's facility in Prescott. Plaintiff's job duties included repairing and servicing tractor-trailer vehicles, as well as cleaning the shop and parking lot and maintaining files of work procedures. Approximately fifteen other Technicians worked in the shop. According to Plaintiff's Complaint, Defendant employed two other African Americans Technicians during his tenure.

Plaintiff makes several allegations regarding racially motivated incidents that occurred during his eleven-month tenure with Defendant.  In May 2011, Plaintiff alleges that a Caucasian co-worker observed Plaintiff sweeping the floor and remarked, "this is just like America, a nigger sweeping the floor and a white man walking around." (ECF No. 39, Exh. 2, p. 74-76). Plaintiff testified in his deposition that he believes the co-worker was drunk at the time the statement was made.  *Id.*  Roughly seven months later, on December 13, 2011, Plaintiff was involved in an altercation with a Caucasian customer who stated that he did not like Muslims and referred to them multiple times as "sand niggers."  *Id.* at p. 30-34. After Plaintiff expressed his displeasure with the customer's statements and general use of the term "nigger," the customer allegedly hit Plaintiff on the shoulder with wiper blades.  *Id.*  Plaintiff responded by kicking the customer.  *Id.*  The customer never returned to the shop while Plaintiff was employed there.  *Id.*

On December 17, 2011, Plaintiff discovered what he describes as a noose sitting on a barrel in the stock room of the shop.  The stock room was an area in the back of the shop with cabinets and shelves containing parts and other items that the Technicians might need to complete their repairs.  *Id.* at p. 39-43.  The stock room was used by multiple Technicians on a daily basis, and no part of the stock room was assigned to any individual Technician.  *Id.*

On December 25, 2011, Gerald Salazaar—a co-worker of Portuguese descent—included Plaintiff in a group text message to a number of co-workers.  The text message depicted two monkeys and purportedly said, "[l]ook, its me and u. Send 2 all ur best buds! Hope I get one back! I'm the cute one on the right. You are the dorky one on the left! haha."  *Id.* at p. 101. Plaintiff stated in his deposition that he interpreted this text message as "downright racist crap." *Id.* at p. 52.

On December 27, 2011, Plaintiff alleges that he found a second noose, this time in his toolbox.  This noose was fashioned out of a piece of jewelry that was akin to a toy from a cracker jack box.  *Id*. at p. 64.  Plaintiff testified that he "considered it a threat, a continuation of trying to make my stay there a living hell."  *Id*. at p. 65.

On January 28, 2012, a co-worker jumped on Plaintiff's back and began making "monkey sounds."  *Id*. at p. 69.  Plaintiff considered this to be a racist insinuation that Plaintiff was a monkey.  That same day, the same co-worker made a reference to Plaintiff's veganism and stated that "[Plaintiff] is a vegan, he will eat some animal crackers."  *Id*. at 70-71.  Plaintiff considered this comment to be racist.  Around this same time period, Plaintiff alleges that the daughter of one of his co-workers referred to him as a "John, John, monkey, monkey."  *Id*. at 82-83.  Plaintiff testified in his deposition that he is only "pretty sure" that this is what was said.  *Id*.

The final incident involved a one-inch bolt being thrown at Plaintiff while working in the shop.  Plaintiff does not know who threw the bolt.  When he turned around after being hit, he states that his co-workers were "ducking and doing their thing."  *Id*. at p. 79-80.  Plaintiff claims that the impact of the bolt caused him some physical pain.

Plaintiff did not report the bolt incident to any of his superiors.  However, he claims that he complained to various superiors about all of the other incidents. Plaintiff alleges that, because management was "doing nothing" to remedy his work environment, he took a few days off to consider whether to continue working for Defendant. *Id*. at p. 84-85.  After some consideration, Plaintiff made the decision to resign on February 6, 2012.

Plaintiff alleges that these incidents are enough to sustain a claim for hostile work environment and constructive discharge under 42 U.S.C. § 1981.[1]  Defendant maintains that

---

[1] In his summary judgment response, Plaintiff also sets out the standard for analyzing a race discrimination claim under Title VII.  However, in this case, Plaintiff's claim is for hostile work

summary judgment is appropriate because, even taking Plaintiff's allegations as true, these incidents fail to prove a claim for hostile work environment based on race.  In the alternative, Defendant argues that Plaintiff's claims are time barred.

<u>STANDARD OF REVIEW</u>

The standard of review for summary judgment is well established.  The Federal Rules of Civil Procedure provide that when a party moves for summary judgment:  "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Krenik v. Cty. of LeSueur*, 47 F.3d 953 (8th Cir. 1995).  The Supreme Court has issued the following guidelines for trial courts to determine whether this standard has been satisfied:

> The inquiry performed is the threshold inquiry of determining whether there is a need for trial—whether, in other words, there are genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.

*Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 250 (1986); *see also Agristor Leasing v. Farrow*, 826 F.2d 732 (8th Cir. 1987); *Niagara of Wis. Paper Corp. v. Paper Indus. Union-Mgmt. Pension Fund*, 800 F.2d 742, 746 (8th Cir. 1986).  A fact is material only when its resolution affects the outcome of the case.  *Anderson*, 477 U.S. at 248.  A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party.  *Id*. at 252.

The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party.  *Enter. Bank v. Magna Bank*, 92 F.3d 743, 747 (8th Cir. 1996).  The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.  *Id*.  The

environment under § 1981—not race discrimination under Title VII.  While § 1981 claims are analogous to Title VII claims, the Court will restrict its analysis to the law regarding hostile work environment claims made pursuant to § 1981.

nonmoving party must then demonstrate the existence of specific facts in the record that create a genuine issue for trial. *Krenik*, 47 F.3d at 957. A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials but must set forth specific facts showing that there is a genuine issue for trial. *Anderson*, 477 U.S. at 256.

DISCUSSION

### A.  The timeliness of Plaintiff's Complaint

Before discussing the merits of Plaintiff's hostile work environment claim, the Court will consider whether his claims are time barred pursuant to a six-month contractual statute of limitations period contained in his employment agreement with Defendant. In this case, Plaintiff filed his Complaint more than two years after resigning from his position with Defendant.

Plaintiff's employment application contains the following language:

> **READ CAREFULLY BEFORE SIGNING** — I agree that any claim or lawsuit out of my employment or termination of employment with TA Operating LLC or any of its subsidiaries, including but not limited to, claims arising under State or Federal civil rights statutes, must be filed no more than six (6) months after the date of the employment action that is the subject of the claim or lawsuit or be forever barred. I waive any statute of limitations to the contrary.

ECF No. 39, Exh. 2, p. 100. At the end of the application, Plaintiff acknowledged the following statement: "I have read and understand the contents of this employment application and am fully able and competent to complete it." *Id*. Plaintiff signed the application both electronically and physically. (ECF No. 39, Exh. 1, p. 1-2).

While 42 U.S.C. § 1981 does not contain a limitations period, claims brought pursuant to § 1981 are generally subject to a four-year statute of limitations. *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 382-84 (2004). However, "[i]t has long been the rule in Arkansas that parties are free to contract for a limitation period which is shorter than that prescribed by the applicable

5

statute of limitations, so long as the stipulated time is not unreasonably short and the agreement does not contravene some statutory requirement or rule based upon public policy." *Ferguson v. Order of United Commercial Travelers of American*, 307 Ark. 452, 455–56 (Ark. 1991) (citing *City of Hot Springs v. National Surety Co*., 531 S.W.2d 8, 10 (Ark. 1975)).

While Arkansas courts have not addressed a contractual limitations period being applied to employment discrimination claims, many courts in other jurisdictions have held that a six-month contractual limitations period is not unreasonable or contrary to public policy in this context. *See Soltani v. Western & Southern Life Ins. Co*., 258 F.3d 1038, 1045 (9th Cir. 2001) (finding that a six-month contractual limitations provision was not unconscionable in a wrongful termination action under California law); *Taylor v. Western & Southern Life Ins. Co*., 966 F.2d 1188, 1206 (7th Cir. 1992) (finding a six-month contractual limitations period to be reasonable and not contrary to public policy as to § 1981 employment discrimination claims under Illinois law); *Thurman v. DaimlerChrysler, Inc*., 397 F.3d 352, 357 (6th Cir. 2004) (finding that a six-month contractual provision in an employment application was not contrary to public policy in the § 1981 context); *Morgan v. Fed. Exp. Corp*., 114 F. Supp. 3d 434, 444 (S.D. Tex. 2015) (upholding a six-month contractual limitations period under Texas law); *Vega v. Fed. Exp. Corp*., No. 09 CIV. 07637, 2011 WL 4494751, at *6 (S.D.N.Y. Sept. 29, 2011) ("Plaintiff's age and race discrimination claims…are time-barred because by signing FedEx's employment application, he had contractually agreed to sue within six months of any alleged discrimination[.]"); *Badgett v. Fed. Express Corp*., 378 F. Supp. 2d 613, 623 (M.D.N.C. 2005) (finding a six-month limitations clause contained in plaintiff's employment agreement to be substantively reasonable under North Carolina law).

In the present case, the Court finds that the six-month contractual limitations period is not unreasonably short or in violation of public policy.  This six-month period gave Plaintiff sufficient time to investigate his claim and prepare a case against Defendant. *See Ferguson*, 821 S.W.2d at 32–33 ("[T]he stipulated period is not unreasonable if the time allowed affords a plaintiff sufficient opportunity to investigate his claim and prepare for the controversy.").  In fact, every factual allegation contained in Plaintiff's Complaint was known to Plaintiff at the time of his resignation. Moreover, Title VII, an analogous statute, has a similar six-month limitations period for discrimination claims.  *S*ee 42 U.S.C. § 2000e–5(e).[2]

Because the Court has determined that the six-month limitations period is reasonable, the only remaining question is whether the provision in Plaintiff's employment application with Defendant was clearly set forth and voluntarily accepted by Plaintiff.  Plaintiff argues that he did not have the opportunity to read over the documents submitted to him.  He also argues that, because he did not receive additional compensation for agreeing to the shortened limitations period, the agreement lacked valid consideration.

The Court finds that Plaintiff knowingly and voluntarily agreed to the terms of the contract.  Under Arkansas law, "one is bound to know the content of a document one signs, and if the signer has had the opportunity to read it before she signs it, she cannot escape the obligations imposed by the documents by merely stating that it was signed without reading it." *Banks v. Evans*, 347 Ark. 383, 391 (Ark. 2002).  While Plaintiff states that he did not have the opportunity to read over the employment application that contained the limitations provision, he only supports this statement with citations to deposition testimony regarding an employee

---

[2] The Court notes that Plaintiff has not argued that a six-month limitations period is inherently unreasonable or against public policy as to claims made pursuant to § 1981.  Plaintiff also makes no argument that the limitations period was tolled or waived or that Defendant somehow prevented him from bringing his claim within six months of his resignation.

handbook he was given at the time he was hired. (ECF No. 51, Exh. 1, p. 3-4).  The provisions in the employee handbook and Plaintiff's opportunity to read those documents are not relevant here.  Plaintiff's deposition testimony and exhibits establish that Plaintiff signed his employment application on two different occasions.  There is no indication from the testimony that he did not have the opportunity to read the relevant provisions in the application.  Moreover, the limitations provision was conspicuously and concisely set forth in the application and was in close proximity to the acknowledgment where Plaintiff indicated he had read and understood the contents of the employment application.

The Court also finds that the employment contract and the limitations provision were supported by valid consideration. Defendant hired Plaintiff subject to the terms in the employment application, including the statute of limitations provision, and Plaintiff's employment provided all of the consideration that was needed.  Plaintiff has not provided the Court with any authority that stands for the proposition that *additional* consideration is needed for a limitations provision to be valid under these circumstances.[3]

For the reasons stated above, the Court finds that Plaintiff voluntarily entered into a contract containing a valid six-month limitations provision.  Because Plaintiff filed his Complaint more than two years after his resignation, the Court finds that Plaintiff's claims are time-barred.  Accordingly, summary judgment in favor of Defendant is appropriate.

---

[3] Plaintiff cites one case, *Lugihibl v. Fifth Third Bank*, No. 13 C 7193, 2015 WL 1235221, at *1 (N.D. Ill. Mar. 16, 2015), for the proposition that additional consideration was needed in this case.  However, Plaintiff misunderstands the holding in *Lugihibl*.  That case held that a statute of limitations provision in an incentive compensation agreement was enforceable because the plaintiff in that case received valuable consideration in return for agreeing to the terms of the incentive compensation agreement—namely, entitlements to incentive compensation. This Court's holding is completely consistent with the holding in *Lugihibl*.

**B. Plaintiff's hostile work environment and constructive discharge claims**

While the Court has concluded that Plaintiff's claims are time-barred, the Court will nonetheless consider the substance of Plaintiff's hostile work environment and constructive termination allegations.

To establish a claim for hostile work environment based on race, the employee must show that he is (1) a member of a protected group; (2) that he was subject to unwelcome race-based harassment; (3) that the harassment was because of membership in the protected group; and (4) that the harassment affected a term, condition, or privilege of his employment. *Clay v. Credit Bureau Enterprises, Inc*., 754 F.3d 535, 540 (8th Cir. 2014). Moreover, if an employee's hostile work environment claim is based on harassment by non-supervisory co-workers, as it is in this case, "the employee must also prove that the employer 'knew or should have known of the harassment and failed to take proper remedial action.'" *Id*. (quoting *Tatum v. City of Berkeley*, 408 F.3d 543, 550 (8th Cir. 2005)).

In order to find that harassment has affected a term, condition, or privilege of employment, the harassment must have been "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Malone v. Ameren UE*, 646 F.3d 512, 517 (8th Cir. 2011) (quoting *Harris v. Forklift Sys., Inc*., 510 U.S. 17, 21 (1993)). "To decide whether a work environment is objectively offensive, ... we examine all the circumstances, including the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating or a mere offensive utterance, and whether the conduct unreasonably interfered with the employee's work performance." *Clay*, 754 F.3d at 540 (quoting *Singletary v. Mo. Dep't of Corr*., 423 F.3d 886, 892–93 (8th Cir. 2005)). A hostile work

9

environment does not exist where "offensive conduct consists of offhand comments and isolated incidents." *Id.*

Taking the facts in the light most reasonable to Plaintiff, the Court finds that Plaintiff has not set forth sufficient evidence to show that the harassment affected a term, condition, or privilege of his employment. As to many of the incidents, he has also failed to demonstrate that the alleged behavior was based on race. Many of Plaintiff's allegations involve "monkey" or animal references which Plaintiff perceived to be racist. Plaintiff also perceived a bolt being thrown by an unknown co-worker to be racist. Upon review of the record, the Court finds that Plaintiff's interpretation of these incidents is based primarily on speculation and conjecture. Accordingly, they cannot support his hostile work environment claim.

Plaintiff does make allegations that are clearly race-based, including the incident where a customer referred to "sand niggers" and generally used the term "nigger," the incident where a co-worker called him a nigger while Plaintiff was sweeping, and the incidents where Plaintiff found a rope fashioned into a noose in the stock room and a small chain fashioned into a noose in his toolbox. While such references and actions are deplorable, they did not occur with enough frequency or severity to sustain a hostile work environment claim in this case. Isolated "offensive utterances" cannot form the basis for a harassment claim. *See EEOC v. CRST Van Expedited, Inc.*, 679 F.3d 657, 687 (8th Cir. 2012). The racial slurs in this case occurred only twice in an eleven-month period. Moreover, while a noose can be a tool used to physically threaten and intimidate, the first noose incident involved a rope being laid in a common area where all employees had access, including the other African-American employees. There is no indication that Plaintiff was specifically targeted with the noose. As to the second noose, it was a small chain described as something one would find in a cracker jack box. The Court finds that

the placement and characteristics of the nooses were not sufficiently threatening to Plaintiff specifically or accompanied by other serious incidents that would give rise to a hostile work environment claim.[4]  *See Jackson v. Flint Ink N. Am. Corp*., 382 F.3d 869, 870 (8th Cir. 2004) (reversing the district court's grant of summary judgment and holding that hostile work environment claim was on the "cusp of submissibility" to a jury where a plaintiff was threatened by name with graffiti depicting a burning cross and KKK sign and was subjected to racial slurs on six occasions);  *Bishop v. Tyson Foods, Inc*., 660 F. Supp. 2d 1004, 1019 (W.D. Ark. 2009), aff'd, 373 F. App'x 649 (8th Cir. 2010) (granting summary judgment in favor of the employer on a hostile work environment claim where a co-worker showed the plaintiff a string noose, said "all rednecks can tie nooses," and showed the plaintiff his "Klan" tattoo).

For the reasons stated above, the Court finds that Plaintiff has failed to establish a claim for hostile work environment.  For the same reasons that his hostile work environment claim fails, Plaintiff has also failed to establish a claim for constructive discharge.  *See Carpenter v. Con-Way Cent. Express, Inc*., 481 F.3d 611, 616 (8th Cir. 2007) ("To prove a case of constructive discharge, a plaintiff must show (1) a reasonable person in his situation would find the working conditions intolerable, and (2) the employer intended to force him to quit."); *Clay v. Credit Bureau Enterprises, Inc*., 754 F.3d 535, 541 (8th Cir. 2014) ("[Plaintiff] concedes that her constructive discharge claim rises and falls on [her] hostile environment claim. Having affirmed the district court's decision on the hostile work environment claim, we need not further address [Plaintiff's] constructive discharge claim.") (internal quotations omitted).    Accordingly, summary judgment in favor of Defendant is proper as to all claims.

---

[4] The Court notes that Defendant disputes that the rope in the stock room and chain in the tool box were actually fashioned into nooses.  For the purpose of deciding this summary judgment motion, the Court accepts Plaintiff's descriptions of the rope and chain as true.

CONCLUSION

For the reasons stated above, the Court finds that Defendant TA Operating LLC's Motion

for Summary Judgment (ECF No. 40) should be and hereby is **GRANTED**.  A judgment of even

date consistent with this opinion shall issue.

IT IS SO ORDERED, this 13th day of April, 2016.


     /s/ Susan O. Hickey
Susan O. Hickey
United States District Judge